IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NA'SHAE BROWN, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| | Case No.: DLB-19-3301 |
| JP MORGAN CHASE BANK, N.A., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Na'Shae Brown, Kya Holmes, and the Estate of John Lee Brown, II claim that defendant JP Morgan Chase Bank, N.A. ("Chase" or the "Bank") should be held liable for injuries that Na'Shae Brown, Kya Holmes, and John Lee Brown, II suffered from lead-based paint exposure when they lived at or visited 2915 Mosher Street in Baltimore, Maryland. Second Am. Compl., ECF 27. The Bank has filed a motion to dismiss, ECF 33, which the parties fully briefed, ECF 33-1, 36 & 37. A hearing is not necessary. *See* Loc. R. 105.6. Because plaintiffs cannot state a claim in negligence against the Bank and do not oppose dismissal of their Maryland Consumer Protection Act claim, *see* Pls.' Resp. 2 n.1, I will grant defendant's motion. I will allow plaintiffs to amend their negligence claim, if they have a good faith basis for doing so, before I dismiss this case.

I.   **Background**[1]

Na'Shae Brown, now 21, was born January 21, 1999; John Lee Brown, II, now deceased, was born April 9, 1999; and Kya Holmes, 20, was born November 16, 2000. Second Am. Compl. ¶ 1. They "resided [in] and/or visited as infants and children a residence located at 2915 Mosher Street" in Baltimore, Maryland (the "Property") from 2001 to 2004. *Id.* Chase "owned, controlled, and managed" the Property. *Id.* ¶ 2. While at the Property, the minors ingested lead-based paint and dust, from which they suffered injuries. *Id.* ¶ 4.

On October 4, 2019, Na'Shae Brown and Kya Holmes filed suit against Chase and Bank One, N.A. in the Circuit Court for Baltimore City, bringing a two-count complaint for negligence (Count I) and violation of the Maryland Consumer Protection Act (Count II). Compl., ECF 4; *see* Am. Compl., ECF 7 (amended to reflect that Holmes, originally listed as a minor, was not a minor when the suit was filed). Chase removed the case to this Court. ECF 1. Plaintiffs amended their complaint again to remove defendant Bank One, N.A., to name Chase "individually and as successor by merger to Bank One, N.A.," and to add plaintiff Estate of John Lee Brown, II. ECF 27.

Plaintiffs allege that Chase visited the Property where flaking paint was visible and received complaints about flaking lead-based paint on the Property. Second Am. Compl. ¶ 6. They also allege generally that Chase "was aware of the dangers of lead paint and that older houses often contain lead paint and that the instant premises was an older house," and that Chase "knew or had reason to know that the paint was lead based paint." *Id.* ¶ 5(e), 6. They claim that, despite

---

[1] For purposes of resolving the Bank's motion to dismiss, the Court "accept[s] as true all of the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

this knowledge, Chase "either caused or allowed the continued existence of paint containing lead pigment on their interior and exterior walls, doors, floors, ceilings and woodwork and knowingly allowed said paint to chip and flake." *Id.* ¶ 3; *see id.* ¶ 5(c)–(g), (i), (k). Plaintiffs assert that Chase "fail[ed] to adequately and properly inspect the premises for chipping, peeling, and flaking paint," *id.* ¶ 5(j), and failed to warn the minors of the hazard, *id.* ¶ 5(b). Plaintiffs also claim that Chase was negligent in its lead abatement efforts, which it performed while the minors were at the Property, without warning them of the hazard. *Id.* ¶ 5(g)–(h).

Chase filed a motion to dismiss both counts of the second amended complaint. ECF 33. The Bank argues that plaintiffs cannot state a negligence claim because the Bank did not owe them a duty, and the allegations are insufficient to state a claim under the Consumer Protection Act. Def.'s Mot. ¶¶ 3–5; Def.'s Mem. 6–8. Plaintiffs do not oppose dismissal of the Consumer Protection Act claim. Pls.' Resp. 2 n.1.

## II. Standard of Review

The Bank filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. 1. A Rule 12(b)(6) motion challenges "the legal sufficiency of a complaint" on the grounds that, "even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *2 (D. Md. Apr. 6, 2020) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017)); *see* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Stated differently, "a complaint must contain 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" *Cooke v. Caliber Home Loans, Inc.*, No. 18-3701-PWG, 2020 WL 1434105, at *3 (D. Md. Mar. 24, 2020) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.     Discussion

To prevail on their negligence claim, plaintiffs must prove "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of duty." *Steamfitters Local Union No. 602 v. Erie Ins. Exch.*, 209 A.3d 158, 169 (Md. Ct. Spec. App. 2019) (quoting *Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016)), *aff'd*, --- A.3d ----, 2020 WL 4282308 (Md. July 27, 2020).[2] A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Id.* at 170 (quoting *Landaverde v. Navarro*, 189 A.3d 849, 863 (Md. Ct. Spec. App. 2018)). The Court determines whether a duty exists as a matter of law. *Id.* at 169 (citing *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933 (Md. 2003)). That determination "depend[s] on the specific facts and circumstances presented." *Id.* at 170.

The issue here is whether plaintiffs have sufficiently alleged that Chase owed a duty to Na'Shae Brown, Kya Holmes, and John Lee Brown, II, who suffered injuries from lead-based paint exposure while they lived at or visited the Property. Traditionally, "[i]n the lead-paint cases, the lessor's duty is owed . . . to the lessee or the lessee's immediate household." *Joseph v. Bozzuto*

---

[2] The parties agree that Maryland law applies. *See* Def.'s Mem. 6; Pls.' Resp. ¶ 9.

4

*Mgmt. Co.*, 918 A.2d 1230, 1238 (Md. Ct. Spec. App. 2007).  In addition, the Baltimore City Housing Code ("Housing Code") imposes a duty on property owners and operators with regard to their tenants.  *See Stedman v. Turk for Estate of Wartzman*, No. 1108, Sept. Term, 2016, 2018 WL 5881751, at *2 (Md. Ct. Spec. App. Nov. 9, 2018).[3]  That is, "the Housing Code, Baltimore City Code (2000 Repl. Vol.), Art. 13, §§ 101 *et seq.*, imposes numerous duties and obligations upon landlords who rent residential property to tenants."  *Brooks v. Lewin Realty III, Inc.*, 835 A.2d 616, 622 (Md. 2003), *abrogated on other grounds by Ruffin Hotel Corp. of Md., Inc. v. Gasper*, 17 A.3d 676 (Md. 2011).

Plaintiffs allege that the Bank "owned, controlled, and managed" the Property.  *See* Second Am. Compl. ¶ 2.  The Bank contends that plaintiffs make "only conclusory and unsupported legal conclusions" without the necessary "factual allegations showing that the defendant 'own[ed], h[e]ld[], or control[led]' the Property during the relevant time period," and therefore they fail to "adequately allege that Chase owed a duty to Plaintiffs that could plausibly give rise to Plaintiffs' lead-based paint claim."  Def.'s Mem. 6.  I agree with the Bank.  Plaintiffs have not alleged in their Second Amended Complaint how Chase, a financial institution, "owned, controlled, and managed" the Property.  *See id.*  Nor do they allege that the Bank rented the Property or otherwise qualified as a landlord.  *See id.*  Their allegations about Chase's role vis-à-vis the Property are mere conclusory statements.

In response to these deficiencies in their complaint, plaintiffs argue that, "[i]n lead paint cases, such as this case, a plaintiff may prove a defendant's negligence by proving a violation of

---

[3] The appellate court noted that the Housing Code was recodified after Stedman filed his appeal. *Stedman*, 2018 WL 5881751, at *1 n.2.  The City Code now states that "each owner and each operator of a structure or premises is responsible for the maintenance of that structure or premises." Building, Fire, & Related Codes of Balt. City, Int'l Prop. Maint. Code § 102.2.3.  The City Code no longer defines owner with regard to this subsection.  *Stedman*, 2018 WL 5881751, at *1 n.2.

the Baltimore City Housing Code because a violation of a statute or ordinance is evidence of negligence." *See* Pls.' Resp. ¶¶ 9, 10, 12. It is true that in Maryland, "the violation of a statute or regulation may sometimes be evidence of negligence." *Joseph*, 918 A.2d at 1239. But to establish a violation of the Housing Code, plaintiffs must prove that the Bank was an owner or operator under the Housing Code at the time of the alleged violation. *See Brooks*, 835 A.2d at 622 (citing Housing Code, Art. 13, §§ 101 *et seq.*); *Stedman*, 2018 WL 5881751, at *4; *Allen v. Dackman*, 991 A.2d 1216, 1223–24 (Md. 2010) (concluding that someone was "had the ability to change or affect the title to the property" could be found to be the owner).

With regard to the requirement that only an owner or operator may be held liable under the Housing Code, *Stedman*, 2018 WL 5881751, is informative. In that case, Markeys Stedman filed suit against Paul Wartzman, a "co-personal representative of the Property" where Stedman allegedly was exposed to lead paint that caused brain damage. *Id.* at *1–2. The owner of the property had died before Stedman filed suit. Plaintiff claimed that the property's personal representative Wartzman "owned and/or controlled and/or managed [the Property], either individually or by the use of agents, servants and/or employees," and should be held liable in negligence and for violating the Maryland Consumer Protection Act. *Id.* Wartzman moved for summary judgment on the ground that "he was neither an Owner nor an Operator of the Property as those terms are defined by the Housing Code of Baltimore City." *Id.* The circuit court granted Wartzman's motion, and Stedman appealed. *Id.* at *3.

The appellate court noted that to breach the Housing Code and "be held personally liable for any resulting harm, one must fall under the definition of Owner or Operator." *Id.* The edition of the Housing Code relevant in *Stedman* (and this case) defined owner as

> any person, firm, corporation, guardian, conservator, receiver, trustee, executor, or other judicial officer, who, alone or jointly or severally with others, owns, holds, or

> controls the whole, or any part, of the freehold or leasehold title to any dwelling or dwelling unit, with or without accompanying actual possession thereof, and shall include in addition to the holder of legal title, any vendee in possession thereof, *but shall not include a mortgagee* or an owner of a reversionary interest under a ground rent lease.

*Stedman*, 2018 WL 5881751, at *4 (quoting Housing Code § 105) (emphasis added). The definition of operator is "any person who has charge, care, or control of all or any portion of a structure or premises on behalf of the owner." *Id.* at *5 (noting that Housing Code § 105 had been recodified to the Code of Public Local Laws for Baltimore City § 9-15 and quoting § 9-15(a)(5) (eff. Oct. 1, 2018)).

The appellate court affirmed the holding in the personal representative's favor. *Id.* at *5. The court reasoned that even if the City Code defined "person" to include "personal representative," it was preempted by a state law provision that "a personal representative in Appellee's position is not individually liable unless he is *personally at fault*." *Id.* Therefore, the personal representative could not "be held personally liable as an Owner" without a showing of personal fault, which Stedman had not made. *Id.* Additionally, the appellate court held that the personal representative "did not have sufficient 'charge, care, or control' of the Property to subject him to individual liability" as an operator. *Id.*

Here, plaintiffs have not sufficiently alleged that Chase was an owner or operator under the Baltimore City Housing Code. None of the cases cited by plaintiffs for the proposition that they may prove negligence by proving a violation of the Housing Code is on point. *See* Pls.' Resp. ¶ 10 (citing *Brooks*, 835 A.2d 616 (lead paint premises liability case against landlord); *Maurer v. Penn. Nat'l Mut. Cas. Ins. Co.*, 945 A.2d 629 (Md. 2007) (action against insurer for underinsured motorist benefits following car accident); *Marrick Homes LLC v. Rutkowski*, 161 A.3d 53 (Md. Ct. Spec. App. 2017) (negligence action by homeowners against builder after guardrail in house failed); *Davis v. Stapf*, 120 A.3d 890 (Md. Ct. Spec. App. 2015) (negligence action against party

7

host who condoned underage drinking at her residence and allowed intoxicated minor to drive); *Rivers v. Hagner Mgmt. Corp.*, 959 A.2d 110 (Md. Ct. Spec. App. 2008) (negligence and premises liability action against landlord and management company after fire); *Moore v. Myers*, 868 A.2d 954 (Md. Ct. Spec. App. 2005) (negligence action against dog owners and vehicle driver after vehicle struck child fleeing chasing dog).

Plaintiffs have not identified any case in which the court held that a defendant other than a landlord or management company could be liable for exposure to lead-based paint in a rental property. And, my independent research has not uncovered any case in which the court held that a financial institution could be held liable in negligence based on a violation of the Housing Code.

As best I can discern, the Bank was the mortgagee and thus explicitly excluded under the Housing Code. Consequently, plaintiffs have not stated a claim in negligence. *See Stedman*, 2018 WL 5881751, at *4 (quoting Housing Code § 105). They will have the opportunity to amend their negligence claim to allege with sufficient particularity how the Bank qualifies as an owner or operator of the Property under the Housing Code, if they have a good faith basis for doing so.

## **ORDER**

For the reasons stated in this Memorandum Opinion, it is, this 5th day of January, 2021, hereby ORDERED that

1. The Bank's motion to dismiss, ECF 33, IS GRANTED;
2. On or before January 26, 2021, Plaintiffs may file an amended complaint against Chase, if they have a good faith basis for doing so; and

3. If Plaintiffs do not file an amended complaint, their complaint will be dismissed with prejudice.

/S/
Deborah L. Boardman
United States Magistrate Judge

lyb